NEHEMIAH S. GLANC, ESQUIRE
Attorney for Plaintiff
42 East 64th Street
New York, New York 10065
ph: 212-838-4811
fx: 212-838-4869
NSG 7264

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X     Docket No.07 CIV-6308
AARON RICHARD GOLUB,                       (JGK)(ECF)

                    Plaintiff,

          -against-

TRANS UNION LLC and NATIONWIDE RECOVERY
SYSTEMS, LTD.,

                    Defendants.
-------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
NATIONWIDE RECOVERY SYSTEMS, LTD.'S MOTION TO DISMISS
AND IN SUPPORT OF CROSS-MOTION**


                    NEHEMIAH S. GLANC, ESQUIRE
                    (NSG 7264)
                    Attorney for Plaintiff
                    42 East 64th Street
                    New York, New York 10065
                    ph: 212-838-4811
                    fx: 212-838-4869

## TABLE OF CONTENTS

Preliminary Statement.............................................1

FACTUAL BACKGROUND...............................................3

POINT I  PLAINTIFF HAS PROPERLY PLED VIOLATIONS OF 15 U.S.C. §
1681S-2(B).......................................................3

POINT II PLAINTIFF HAS PROPERLY PLED THAT NRS FAILED TO HAVE A
REASONABLE PROCEDURE IN PLACE TO CONDUCT A REASONABLE
REINVESTIGATION .................................................9

POINT III THE FCRA DOES NOT PREEMPT PLAINTIFF'S STATE COMMON LAW
CLAIM FOR CREDIT DEFAMATION.....................................12

POINT IV PLAINTIFF SHOULD BE PERMITTED AMEND THE COMPLAINT.....21

CONCLUSION......................................................23

## PRELIMINARY STATEMENT

Defendant Nationwide Recovery Systems, Ltd. ("NRS") either did not conduct a reasonable re-investigation into plaintiff's dispute with Cingular Wireless Corporation ("CWC") pursuant to 15 U.S.C.§ 1681s-2(b) and/or has failed to establish reasonable procedures and mechanisms to implement its statutorily mandated obligations under the Fair Credit Reporting Act ("FCRA") including re-investigation procedures pursuant to 15 U.S.C. 1681s-2(e).

Despite repeated notice and warnings to defendants that CWC's alleged claim against plaintiff is fully disputed, defendants persist in reporting the dispute as "Placed For Collection," an "Open Account" and "Collection Agency/Attorney" (Ex. 5 page 1 last entry). See Points I and II below.

Perhaps the most egregious aspect of NRS's motion is its principal reliance, concerning the preemption issue, on a case which was vacated in pertinent part by the judge who issued it, i.e. Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp.2d 356 (E.D.Pa. 2001) (Def. Memo p. 6). NRS failed to provide the full citation to Jaramillo - i.e. Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp.2d 356 (E.D.Pa. 2001), **vacated in relevant part, 2001 WL 1762626 (E.D. Pa. June 20, 2001).** See DiPrinzio v. MBNA America Bank, N.A., 2005 WL 2039175 (E.D. Pa. Aug. 24, 2005) holding:

> In Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp.2d 356, 363 (E.D.Pa.2001) ("Jaramillo I" ), the

court first held that 15 U.S.C. § 1681t(b)(1)(F)
preempted state law claims based on defamation and the
state consumer protection law, but upon
reconsideration, permitted the defamation claim to
proceed. Compare <u>Jaramillo</u>, 155 F.Supp.2d at 362, with
<u>Jaramillo v. Experian Info. Solutions, Inc.</u>, Civ. A.
No. 00-5876, 2001 WL 1762626 (E.D.Pa. May 21, 2001)
("Jaramillo II"). <u>Id.,</u> at 6.

Additionally, NRS relies on a preemption theory - total
preemption (Def. Memo pp.5-6) - which has been rejected by most
courts including the federal courts in this circuit.  NRS failed
to address, much less mention, the preemption theory adopted by
the courts in this circuit and other circuits. <u>See</u> Point III
below.

Pursuant to <u>15 U.S.C. § 1681o(b)</u>[1] and <u>15 U.S.C. §</u>
<u>1681n(c)</u>,[2] this Court should award plaintiff attorneys fees
against NRS for filing a meritless motion which references vacated

---

[1]  <u>15 U.S.C. § 1681o(b)</u> provides:

(b) Attorney's fees
    On a finding by the court that an unsuccessful
    pleading, **motion**, or other paper filed in connection
    with an action under this section was filed in bad
    faith or for purposes of harassment, the court shall
    award to the prevailing party attorney's fees
    reasonable in relation to the work expended in
    responding to the pleading, motion, or other paper.

[2]  <u>15 U.S.C. § 1681n(c)</u> provides:

(c) Attorney's fees
    Upon a finding by the court that an unsuccessful
    pleading, **motion**, or other paper filed in connection
    with an action under this section was filed in bad
    faith or for purposes of harassment, the court shall
    award to the prevailing party attorney's fees
    reasonable in relation to the work expended in
    responding to the pleading, motion, or other paper.

caselaw and advocates legal theories which have been rejected by all courts in this circuit which have considered the matter.

## FACTUAL BACKGROUND

The Court is respectfully referred to the accompanying declaration of plaintiff Aaron Richard Golub dated September 21, 2007 and the Complaint (Ex. 1, pars. 5-34), for the background facts herein.

## POINT I
### PLAINTIFF HAS PROPERLY PLED VIOLATIONS OF 15 U.S.C. § 1681S-2(B)

Plaintiff's first and third causes of action against defendant Nationwide Recovery Systems, Ltd. ("NRS") are for, respectively, NRS's negligent and/or wilful non-compliance with the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681s-2(b).[3]

---

[3] 15 U.S.C. § 1681s-2(b)(1) provides in pertinent part as follows:

(1) *In general.* After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

**(A)** conduct an investigation with respect to the disputed information;

**(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

**(C)** report the results of the investigation to the consumer reporting agency;

**(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

Defendant NRS (a furnisher of credit information and the creditor CWC's assignee), upon receiving notice from defendant Trans Union LLC ("TU") (a credit reporting agency) that information NRS provided TU concerning plaintiff has been disputed by plaintiff (see Ex. 7), was required by 15 U.S.C. § 1681s-2(b) to review the information provided by TU and conduct its **own** reinvestigation of the accuracy and completeness of the disputed information it originally furnished to TU.  The courts have consistently adopted the "reasonable investigation" standard which is the same standard for credit reporting agencies - such as TU - under 15 U.S.C. § 1681i. DiPrinzio v. MBNA America Bank, N.A., 2005 WL 2039175 (E.D. Pa. Aug. 24, 2005); Cushman v. Trans Union Corp., 115 F.3d 220, 224-25 (3rd Cir.1997)and Johnson v. MBNA Bank, N.A., 357 F.3d 426, 432-433 (4th Cir. 2004), Rosenberg v. Calvary Investments, LLC, 2005 WL 2490353 (D.Conn. Sept. 30, 2005).

NRS's reasonable reinvestigation must be a good faith effort to ascertain the truth.  Therefore, a reasonable reinvestigation must answer the substance of plaintiff's dispute

---

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

(i) modify that item of information;

(ii) delete that item of information;  or

(iii) permanently block the reporting of that item of information.

and not merely a pro forma review that begs the question.  It is clear from Ex. 8, in which TU states that "we are unable to provide you with a copy of the **response form** from" NRS, that NRS merely checked boxes in a form without conducting the underlying investigation of the claim.  Checking a box is inadequate investigation under 15 U.S.C. § 1681s-2(b) once a furnisher of information receives specific notice of the nature of plaintiff's dispute. Johnson, supra, and Malm v. Household Bank (SB) N.A., 2004 WL 1559370 (D.Minn. July 7, 2004).

Additionally, NRS should have at least contacted plaintiff as part of its reasonable investigation, which it did not do. See Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1986).

Significantly, there is no affidavit from defendant NRS describing the reinvestigation process it was required to make and it does not annex any documents to its motion which would verify the type and manner of the reinvestigations it allegedly undertook.  NRS does not disclose what it did or did not do as part of its reinvestigation and fails to even disclose the amount of time allocated by NRS for its employees to conduct the investigation. See DiPrinzio and Rosenberg, supra.

Additionally and most significantly, NRS failed to report, as part of its reinvestigation, that the CWC account is disputed by the account holder/plaintiff.  Instead, NRS simply parroted that the account is subject to collection by a collection

agency. <u>See</u> 15 U.S.C. §1681s-2(a)(3);[4] <u>DiPrinzio</u>, <u>supra</u>, holding that a credit report stating that an account is "charged off" but omitting to state that the account is disputed, is actionable because "by omitting the fact that plaintiff disputed her credit bills... defendant's report could have misled potential creditors into thinking that plaintiff had failed to repay money that she herself had borrowed." <u>Id.</u>, at p.4.

     That is precisely what happened to plaintiff in this case (Golub decl. par. 7-12). NRS (and TU), by omitting to state that the CWC account with plaintiff is disputed, misled users of information, such as Citibank, into thinking that plaintiff is a deadbeat debtor who does not pay his bills (Golub decl. par. 7-12). Based on NRS's inaccurate information, Citibank declined to extend credit to plaintiff (Ex.1 Par. 18-21; Golub decl. Par. 9, Ex. 3-4).

     In <u>Johnson</u>, <u>supra</u>, - a seminal decision on furnisher liability - the court confirmed that the investigation must be a substantive examination of the merits of the dispute, holding:

---

[4] <u>15 U.S.C. § 1681s-2(a)(3)</u> provides:

(a) Duty of furnishers of information to provide accurate information

          . . .

   (3) Duty to provide notice of dispute

      If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."

> We therefore hold that § 1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified. Id., at 431.

The court in Johnson, supra, held that a reasonable investigation "requires some degree of careful inquiry" as opposed to merely "superficial" inquiry. Id., at 430. Just as a credit reporting agency's reasonable investigation may not simply parrot the furnisher's position,[5] the furnisher's reasonable reinvestigation must contain a "qualitative component" and thus may not merely beg the question by confirming that the disputed information itself is being faithfully conveyed to defendant TU. Id., at 430.

Similarly, in United States of America v. Performance Capital Management, Inc., 2000 WL 1204636 (C.D. Cal. Aug. 24, 2000) - apparently the Federal Trade Commissions's ("FTC") first enforcement action under 15 U.S.C. § 1681s-2 - the court, via a consent decree, imposed the requirement that a furnisher of information such as NRS must refer to original account records and even consult third parties when necessary to actually investigate the merits of a dispute.[6]

Significantly, the consent decree in Performance, supra, provides in pertinent part:

---

[5] See Cushman, supra.

[6] According to the consent decree, a furnisher such as NRS cannot merely rely on the disputed information itself but must verify the debt with original account records and if no original records exists, the consent decree requires that the information be deleted.

"IT IS FURTHER ORDERED that defendant... are hereby enjoined...from :
                    . . .
        C. failing to report accounts as "disputed" to consumer reporting agencies as required by Section 623(a)(3) of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a)(3), when consumers dispute accounts either in writing, orally, or by electronic means."

The FTC's enforcement position, entered through a consent decree, is precedential.[7]

In sum, plaintiff has alleged a pattern of activity from which a trier of fact can infer that NRS negligently and/or wilfully failed in its obligations to conduct a reasonable reinvestigation of the disputed CWC account.  NRS purportedly "verified" an alleged debt that was owed by plaintiff to CWC but failed to state that the debt had been disputed since November, 2005 as required by 15 U.S.C. § 1681 et seq.  A reasonable reinvestigation by NRS would have revealed that plaintiff has been disputing the debt for over two years.  See DiPrinzio, supra, at 4-5.  See also Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002).[8]

---

[7] Mann v. Experian Info. Solutions, 2004 WL 432498 (N.D.Ill., Feb. 19, 2004) and Wade v. Equifax, 2003 WL 220896494 (N.D.Ill., Sept. 8, 2003) (Def. Memo p. 4) are irrelevant.  Plaintiff is not arguing that TU must follow the results of NRS's reinvestigation.  Plaintiff is alleging that NRS failed to advise TU that the account is disputed.  NRS (and TU) concede that NRS failed to advise TU the account is disputed and instead "verified the account as being accurately reported," (Ex. 8).

[8] Holding:

    "We turn to subsection 1681s-2(b).  This section specifies what happens after a CRA receives notice 'pursuant to section 1681i(a)(2) ... of a dispute with regard to the completeness or

In any event, the reasonableness of a reinvestigation is a question of fact for a jury.  See Bruce v. First U.S.S. Bank., et al., 103 F.Supp.2d 1135 (E.D. Mo., 2000); DiPrinzio; Rosenberg; and Cushman, supra.

## POINT II
### PLAINTIFF HAS PROPERLY PLED THAT NRS FAILED TO HAVE A REASONABLE PROCEDURE IN PLACE TO CONDUCT A REASONABLE REINVESTIGATION

Plaintiff's fourth cause of action against defendant NRS is for its negligent (and/or wilful - see Point IV) failure to have the facilities in place, or a mechanism or procedure in place to conduct a reasonable reinvestigation.

Contrary to NRS's arguments (Def. Memo pp. 4-5), 15 U.S.C. § 1681s-2(b) imposes an affirmative obligation on NRS to participate in the reinvestigations conducted by defendant TU. Specifically, pursuant to 15 U.S.C. § 1681s-2(e),[9] NRS must

---

accuracy of information provided by a person' to the CRA. The person, i.e., the furnisher of the disputed information, has four duties: to conduct an 'investigation with respect to the disputed information;" to review all relevant information provided by the CRA; to report the results of its investigation to the CRA; and if the investigation finds the information is incomplete or inaccurate to report those results 'to all [nationwide] consumer reporting agencies to which the person furnished the information." Id.,at 1059.

[9]  15 U.S.C. § 1681s-2(e) provides:

"(e) Accuracy guidelines and regulations required

(1) Guidelines

The Federal banking agencies, the National Credit Union Administration, and the Commission shall, with respect to the entities that are subject to their respective enforcement authority under section 1681m of this title, and in coordination as described in paragraph (2)--

establish reasonable policies and procedures for their statutorily mandated reinvestigation.

Pursuant to <u>15 U.S.C. § 1681s-2(b)(1)(A)-(E)</u>, NRS must have the appropriate facilities or mechanism in place to:

i.   Conduct its own reinvestigation of the dispute;

ii.  Review all relevant information provided by TU for

---

(A) establish and maintain guidelines for use by each person that furnishes information to a consumer reporting agency **regarding the accuracy and integrity of the information** relating to consumers that such entities furnish to consumer reporting agencies, and update such guidelines as often as necessary; and

(B) prescribe regulations requiring **each person that furnishes information to a consumer reporting agency to <u>establish reasonable policies and procedures for implementing</u> the guidelines established pursuant to subparagraph (A).**
                         . . .

(3) Criteria

In developing the guidelines required by paragraph (1)(A), the agencies described in paragraph (1) shall--

(A) identify patterns, practices, and specific forms of activity that can compromise **the accuracy and integrity** of information furnished to consumer reporting agencies;

(B) review the methods (including technological means) used to furnish information relating to consumers to consumer reporting agencies;

(C) determine whether **persons that furnish information to consumer reporting agencies maintain and enforce policies to assure the accuracy and integrity of information** furnished to consumer reporting agencies; and

(D) examine the **policies and processes that persons that furnish information to consumer reporting agencies employ to <u>conduct reinvestigations and correct inaccurate information</u>** relating to consumers that has been furnished to consumer reporting agencies." (emphasis supplied)

-10-

completeness and accuracy;

iii. If the information is incomplete or inaccurate, report those results to TU and other reporting agencies;

iv. In the case of inaccurate, incomplete, or unverifiable information, promptly modify, delete, or permanently block the reporting of the information;

v. Report the results of the investigation to TU. See also, Trikas v. Universal Card Services Corp., 351 F.Supp.2d 37 (EDNY 2005); Pinner, Nelson and DiPrinzio, supra.

In Trikas, supra, the court held that defendant - a furnisher of information - violated 15 U.S.C. § 1681s-2(b) because it failed to have a reasonable procedure in place to complete its reinvestigations within the 30 day statutory time period.

Pursuant to 15 U.S.C. § 1681s-2(b) and 15 U.S.C. § 1681s-2(e), NRS is required to have a mechanism in place by which reinvestigations are conducted in good faith and not simply pro forma. Such a mechanism must be able to consider and evaluate the specific dispute as framed by a consumer (such as plaintiff) along with other facts and concerns evidenced in the materials provided by the credit reporting agency/TU to NRS.

The purpose of NRS's statutorily mandated reinvestigation is not simply to confirm that TU accurately recorded the information initially furnished by NRS but also to determine in good faith the accuracy and completeness of the information itself in light of all available information. More is required than simply confirming that the disputed information was in fact reported by TU as it was received or initially reported by NRS. See DiPrinzio and Pinner, supra.

-11-

A reasonable reinvestigation procedure should include contacting the consumer where appropriate. The documentation supplied by plaintiff to NRS - through TU and CWC (Ex. 6) - put NRS on notice of the high level of animosity between plaintiff and CWC, which in turn should have triggered an NRS procedure to contact plaintiff directly concerning the dispute. Plaintiff was never contacted by NRS as part of NRS's alleged reinvestigation.

In Pinner, supra, the court held defendants were negligent concerning their reinvestigation when they only contacted the alleged creditor concerning the disputed account.

In any event, the issue of whether NRS's reinvestigation procedure, if any, is reasonable is a question of fact for a jury. See Bruce and Cushman, supra.

Plaintiff has properly alleged a cause of action for NRS's negligent (and/or wilful) failure to have the facilities in place, or a mechanism or procedure in place to conduct a reasonable reinvestigation into the CWC matter.

### POINT III
### THE FCRA DOES NOT PREEMPT PLAINTIFF'S STATE COMMON LAW CLAIM FOR CREDIT DEFAMATION

Plaintiff's sixth cause of action against defendant NRS is for credit defamation pursuant to New York State common law. The FCRA contains two apparently contradictory preemption provisions, i.e. 15 U.S.C. § 1681h(e)[10] and 15 U.S.C. §

---

[10]  15 U.S.C. § 1681h(e) provides in relevant part as follows:

"(e) Limitation of liability

1681t(b)(1)(F).[11]

NRS's Memorandum of Law (pp. 5-7) glaringly - and perhaps intentionally - omits discussion, much less mention, of the three methodologies the district courts have developed to reconcile the two aforesaid apparently inconsistent FCRA preemption provisions.  NRS's methodology - total preemption - has been rejected by most district courts in the United States including courts in this circuit.

Moreover, as discussed immediately below, one of two cases referenced by NRS in support of its position was vacated by the judge who issued it, i.e. Jaramillo v. Experian Info.

_____

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report **except as to false information furnished with malice or willful intent to injure such consumer"** (emphasis supplied).

[11]   15 U.S.C. § 1681t(b)(1)(F) provides in pertinent part as follows:

"(b) General exceptions

No requirement or prohibition may be imposed under the laws of any State--

        (1) with respect to any subject matter regulated under--
                        .  .  .

                (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply..."

-13-

<u>Solutions, Inc.</u>, 155 F.Supp.2d 356 (E.D.Pa. 2001) (Def. Memo p. 6). NRS omitted the full legal citation for <u>Jaramillo</u> which was vacated in pertinent by 2001 WL 1762626 (E.D. Pa. June 20, 2001).[12]

In <u>Kane v. Guaranty Residential Lending, Inc.</u>, 2005 WL 1153623 (EDNY May 16, 2005), then Chief Judge Korman conducted a comprehensive analysis of the two above referenced preemption provisions and identified the three prevailing methodologies utilized by the district courts to reconcile the two preemption provisions as follows: total preemption;[13] temporal preemption;[14]

_____

[12]    See <u>DiPrinzio v. MBNA America Bank, N.A.</u>, 2005 WL 2039175 (E.D. Pa. Aug. 24, 2005) holding:
"In <u>Jaramillo v. Experian Info. Solutions, Inc.</u>, 155 F.Supp.2d 356, 363 (E.D.Pa.2001) ("Jaramillo I" ), the court first held that 15 U.S.C. § 1681t(b)(1)(F) preempted state law claims based on defamation and the state consumer protection law, but upon reconsideration, permitted the defamation claim to proceed. Compare <u>Jaramillo</u>, 155 F.Supp.2d at 362, with <u>Jaramillo v. Experian Info. Solutions, Inc.</u>, Civ. A. No. 00-5876, 2001 WL 1762626 (E.D.Pa. May 21, 2001) ("Jaramillo II" ). <u>Id.</u>, at 6."

[13]    See <u>Kane</u>, <u>supra</u>, holding:
"Under the first approach courts have used to resolve the tension between Sections 1681h(e) and 1681t(b)(1)(F), the 'total preemption' approach, all state causes of action against furnishers of information are deemed preempted by the sweeping language of § 1681t(b)(1)(F). [citation omitted]" <u>Id.</u>, at 7.

[14]    See <u>Kane</u>, <u>supra</u>, holding:
"In order to avoid reading § 1681t(b)(1)(F) so broadly that it renders § 1681h(e)superfluous, other courts have adopted a second, more limited approach to preemption of state claims under the FCRA. Under this second approach, known as the 'temporal approach,' 'the only state law claims preempted are those relating to the obligations of furnishers of information once they know, or have reason to know, about possible inaccuracies.' [citation omitted].... ('[T]he temporal approach is the most convincing ... because it follows the 'whole statute' analysis

-14-

and statutory preemption.[15]

In Kane, supra, the court adopted the temporal preemption approach under which 15 U.S.C. § 1681t(b)(1)(F) preempts only state law claims arising **after** the furnisher of information receives notice of a dispute from a credit reporting agency.  Claims arising **before** such notice are governed by 15 U.S.C. § 1681h(e) and are not preempted if such claims allege that the defamatory information was supplied with malice or wilful intent to injure.

The courts in this circuit have adopted the temporal preemption approach and have rejected the total preemption approach advocated by NRS. See Gross v. Washington Mut., Inc., 2007 WL 1404435 (SDNY May 10, 2007); Prakash v. Homecomings Financial, 2006 WL 2570900 (EDNY Sep. 5, 2006); Fashakin v. Nextel

---

and does not render either section superfluous.').

Under the temporal approach, state law claims based on actions of a furnisher of information **after** the furnisher has received notice of inaccuracies are held preempted by § 1681t(b)(1)(F), while actions taken **before** notice has been received may not be preempted. [citation omitted]..." Id., at 8. (emphasis supplied).

[15]    See Kane, supra, holding:
"Finally, some courts have taken yet a third approach to reconciling Sections 1681h(e) and 1681t(b)(1)(F). Under this 'statutory preemption' approach, courts have concluded that § 1681t(b)(1)(F) only applies to, and preempts, claims based on state statutes, while § 1681h(e)-and its malice requirement-applies to state common law torts. [citation omitted]. This third approach is 'somewhat strained, however, because § 1681t(b)(1)(F) does not specify that it relates to statutes only. Further, as [this approach] greatly minimize[s] § 1681t(b)(1)(F)'s applicability, [it] run[s] afoul of the 'whole statute' approach' and is therefore unpersuasive." [citation omitted] Id., at 9.

Communication, 2006 WL 1875341 (EDNY July 5, 2006); Harrison v. Ford Motor Credit Co., 2005 WL 15452 (D. Conn. Jan. 3, 2005); Ryder v. Washington Mut. Bank, FA, 371 F. Supp.2d 152 (D. Conn. 2005).

The two cases referenced by NRS in support, i.e. Hasvold v. First U.S.A. Bank, N.A., 194 F.Supp.2d 1228 (D.Wy. 2002) and Jaramillo, supra, (Def. Memo p. 6), were considered and rejected in Kane, supra, because those two cases - Hasvold and Jaramillo - adopt the extreme total preemption approach which is **not** the approach adopted in this circuit.

Additionally, as noted above, NRS failed to supply the court the full and complete legal citation to Jaramillo, supra, which was vacated in relevant part by the judge who issued it - see Jaramillo v. Experian Info. Solutions, Inc., 2001 WL 1762626 (E.D. Pa. June 20, 2001).

Gross, supra, a case in this district and which is referenced by NRS in support of its total preemption approach (Def. Memo p. 6), actually supports plaintiff's position.  In Gross, supra, the plaintiff's New York state claim was dismissed - not because it was totally preempted but because it was "completely devoid of allegations of malice or willful intent to injure plaintiff" (Gross, supra, at 4) which allegations are required under 15 U.S.C. § 1681h(e).

Under the temporal preemption approach, 15 U.S.C. § 1681t does not preempt plaintiff's sixth cause of action for

defamation because plaintiff's claims arose **before** the statutory
act which triggers preemption under the temporal approach (Ex. 1
par. 65)[16] and because plaintiff alleged malice and wilful intent
(Ex. 1 par. 68-69).

NRS's argument that plaintiff has failed to allege
wilfulness or malice (Def. Memo p. 6-7) is baseless and NRS does
not reference any case in which defamation was alleged in the
context of an FCRA action.[17]  In McCloud v. Homeside Lending, 309
F.Supp.2d 1335 (N.D. Ala. 2004), the defendant refused to correct
inaccurate credit information.  The defendant argued that the
complaint did not allege that it acted with malice or willful
intent against plaintiff and, as such, the plaintiff's claims for
defamation and invasion of privacy should be dismissed.  Plaintiff
argued that defendant: "willfully" failed to follow reasonable
procedures to assure accuracy when preparing the plaintiff's
consumer report; "willfully" failed to disclose accurate

---

[16]  Par. 65 of plaintiff's complaint (Ex. 1) alleges the cause of
action for defamation arose "due to information reported by NRS to TU
**prior** to receiving notice of the disputed item from TU."

[17]  Matthew v. Malkus, 377 F.Supp.2d 350 (SDNY 2005), (Def. Memo
pg. 7),only sets forth the generalized elements of a claim for
defamation. Id., at 358.

The Public Relations Society of America, Inc. v. Road Runner High
Speed Online, 8 Misc.3d 820, 799 N.Y.S.2d 847 (Sup. Ct. New York Co.
2005), (Def. Memo pg. 7) concerns pre-action discovery into whether or
not a proposed plaintiff has sufficient information to bring a case
for defamation.

Guccione v. Hustler Magazine, Inc., 800 F.2d 298 (2nd Cir. 1986),
(Def. Memo pg. 6),stands only for the generalized proposition that
"truth is an absolute, unqualified defense to a civil defamation
action." Id., at 301.

information about the plaintiff when requested to do so; "willfully" failed to delete incomplete and inaccurate information in the plaintiff's file after conducting a reinvestigation; "willfully" failed to contact the sources suggested by the plaintiff during the reinvestigation; and "willfully" failed to provide subsequent users of the report with an appropriate statement of dispute or summary thereof; and "knew or should have known" that the information concerning plaintiff's credit was inaccurate.

The court in McCloud, supra, held these allegations were sufficient allegations of the defendant's "willful intent to injure" the plaintiff and therefore the plaintiff's claims for defamation and invasion of privacy were not preempted.

Plaintiff in this action has more than sufficiently alleged NRS's wilful failure to follow reasonable procedures to assure accuracy (Ex. 1 par. 30-34, 38-39, 41, 48-55, 63-70), wilful failure to disclose accurate information about the plaintiff when requested to do so (Ex. 1 pars. 20-26), wilful failure to delete incomplete and inaccurate information in the plaintiff's file after conducting an initial and subsequent investigation (Ex. 1 pars. 30-32), wilful failure to contact plaintiff (Ex. 1 par. 30-33), and NRS knew or should have known that the information concerning plaintiff was inaccurate and/or incomplete (Ex. 1 par. 25 and 67).

-18-

Federal Rule of Civil Procedure ("FRCP") Rule 9(b)[18] does not require malice to be plead with particularity and can be averred generally.[19]

NRS's defense (Def. Memo p.7) that the information it reported to TU is and was technically true, is unavailing.  In DiPrinzio, supra, the court held:

> "In an effort to overcome plaintiff's contentions, defendant avers that 'incomplete information' is different from 'false information.' Such an argument, however, turns on a skewed interpretation of truthfulness. Though 'technically accurate,' **a report lacking pertinent information such as disputed debt is 'actionable because it is misleading or materially incomplete.'** [citation omitted] **By omitting the fact that plaintiff disputed her credit bills - not to mention plaintiff's separation from her husband - defendant's report could have misled potential creditors into thinking that plaintiff had failed to repay money that she herself had borrowed.** As such, we reject MBNA's 'technical accuracy defense' and find that defendant's credit reports may have been so incomplete and misleading as to constitute "false information" under the meaning of section 1681h(e).

> Alternatively, defendant argues that the information it reported to the credit reporting agencies was 'truthful' because it accurately reflected the status of plaintiff's account-i.e.,'charged off.' We find, however, that this reasoning erroneously conflates truth as it pertains to a customer's actions, and truth as it pertains to the content of a credit record. [citation omitted]. **Clearly, section 1681h(e) requires furnishers of credit information to**

---

[18]  FRCP Rule 9(b)provides in pertinent part:

"(b) ... Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

[19]  In any event, contrary to NRS's argument (Def. Memo pp. 6-7), proof of malice and/or evil motive is not necessary in order for NRS to be found liable for wilful noncompliance of the FCRA.  All that a plaintiff must allege and prove is that a defendant knowingly and intentionally committed an action or inaction in conscious disregard for the rights of others. See Pinner, supra, and Stevenson v. TRW, 987 F.2d 288, 293 (5th Cir. 1993).

**accurately report what a consumer has done, not merely what a bank chooses to include in its records** [citation omitted]. The defendant would have this Court believe that section 1681h(e) protects banks that furnish false facts about a customer, as long as the information matches what is stored in a customer database. Such logic defies common sense and the meaning of the Act." (emphasis supplied) Id., at 4-5.

As detailed in plaintiff's declaration (Golub decl. par. 7-9), NRS, by wilfully or negligently omitting to report the fact that plaintiff's claim is disputed, creates an image that plaintiff is a "deadbeat" debtor who does not or is incapable of paying his bills.

The FCRA requires more than technical or literal accuracy - it requires "maximum possible accuracy of the information concerning the individual about whom the report relates". See 15 U.S.C. § 1681(e)(b); Pinner, supra, holding information inaccurate because "any person could easily have" misconstrued the reporting (Id., at 1262); Koropoulos v The Credit Bureau, Inc., 734 F.2d 37 (D.C. 1984) holding:

"First of all, we do not agree with the district court that section 1681e(b) makes a credit reporting agency liable for damages only if the report contains statements that are technically untrue. Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the Act requires reasonable procedures to assure "maximum accuracy." The Act's self-stated purpose is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681e(b). **Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports.**" Id. at 40 (emphasis added).

See also, Agosta v. InoVision, Inc., 2003 WL 22999213 (E.D.

Pa., Dec. 16, 2003), holding:

> Though 'technically accurate,' a derogatory entry on a
> credit report is actionable because it is misleading or
> materially incomplete. [citation omitted] ... The court also
> noted that the 'technical accuracy defense' is not in accord
> with the purpose of the FCRA [citation omitted]. Id., at 5.

Thus, a consumer report is inaccurate if it is
potentially misleading.

### POINT IV
### PLAINTIFF SHOULD BE PERMITTED AMEND THE COMPLAINT

Plaintiff cross-moves to amend his fourth cause of
action against NRS to include claims under 15 U.S.C. § 1681n for
**wilful** - in addition to negligent[20] - failure to implement
reasonable procedures for compliance with NRS's obligations under
the FCRA including re-investigation procedures and/or mechanisms
(Ex. 13).[21]

Similarly, plaintiff cross-moves to amend his fifth
cause of action against TU to include claims under 15 U.S.C. 1681n
for **wilful** - in addition to negligent[22] - failure to implement
reasonable procedures for compliance with TU's obligations under
the FCRA including investigation procedures and/or mechanisms.

Plaintiff's sixth cause of action for defamation is
alleged against NRS (Ex. 1).  Plaintiff is also cross-moving to
include defendant TU in his sixth cause of action for defamation.

---

[20] Pursuant to 15 U.S.C. § 1681o.

[21] Exhibit 13 contains the proposed amended complaint and a
redline version showing all proposed additions and deletions.

[22] Pursuant to 15 U.S.C. § 1681o.

Plaintiff's proposed First Amended Complaint ("FAC") (Ex. 13) is related to the subject matter of the existing controversy between the parties, is timely and will not result in prejudice to defendants NRS or TU.

Pursuant to <u>FRCP Rule 15(a)</u> the court is given very broad discretion when considering a motion to amend a complaint.[23] The policy in this Circuit is to liberally permit amendments. <u>See Advanced Magnetics, Inc., v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 19 (2nd Cir. 1997); <u>Milanese v. Rust-Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2001) holding that where, as here:

> "a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." <u>Id.</u>, at 110.

At this nascent stage of the case, where responsive pleadings have not been served and discovery has not yet commenced, there is no prejudice to defendants.  There is no bad faith motive or dilatory conduct in plaintiff's coss-motion to amend as plaintiff is moving to amend at an early stage of the case as part of his opposition to NRS's motion to dismiss.

Additionally, as discussed in Points I, II and III, plaintiff's claims against defendants under the FCRA and common

---

[23] FCRP 15(a) provides in pertinent part:

> "(a)... and leave shall be freely given when justice so requires."

law defamation are not futile and thus, his cross-motion should be granted.

### CONCLUSION

For the foregoing reasons it is respectfully requested that defendant NRS's Motion to Dismiss be denied in full, and plaintiff's cross-motion be granted in full, together with such other and further relief as to this Court seems just and proper.

Dated:    New York, New York
          September 21, 2007

                              Respectfully submitted,


                              S/ NEHEMIAH S. CLANC
                              NEHEMIAH S. GLANC, ESQUIRE
                              Attorney for Plaintiff
                              42 East 64th Street
                              New York, New York 10065
                              ph: 212-838-4811
                              fx: 212-838-4869
                              NSG 7264